UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SEAN W.,[1]

           Plaintiff,      Case # 20-CV-1653-FPG

v.                    DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

           Defendant.

**INTRODUCTION**

On May 18, 2018, Plaintiff Sean W. protectively filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), alleging disability beginning on November 1, 2017, due to multiple physical impairments. Tr.[2] 169-75. The Social Security Administration ("SSA") denied his claim, Tr. 80, 94-98, and Plaintiff filed a timely request for a hearing. Tr. 100.

Plaintiff appeared and testified at a hearing before Administrative Law Judge Theodore Kim (the "ALJ") on November 14, 2019. Tr. 41-79. The ALJ issued an unfavorable decision on January 22, 2020. Tr. 24-35. Plaintiff appealed to the Appeals Council, which denied Plaintiff's request for review, making the ALJ's decision the final decision of the SSA. Tr. 1-7. Plaintiff then appealed to this Court.[3] ECF No. 1.

The parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 9, 14. For the reasons that follow, Plaintiff's motion is GRANTED,

---

[1] In accordance with this Court's November 18, 2020 Standing Order regarding the identification of non-government parties in social security decisions, available at https://www.nywd.uscourts.gov/standing-orders-and-district-plans, this Decision and Order will identify Plaintiff using only Plaintiff's first name and last initial.

[2] "Tr." refers to the administrative record in this matter. ECF No. 8.

[3] The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

the Commissioner's motion is DENIED, and this matter is REMANDED for further proceedings.

## LEGAL STANDARD

### I.      District Court Review

When it reviews a final decision of the SSA, it is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. §§ 405(g), 1383(c)(3)) (other citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

### II.     Disability Determination

To determine whether a claimant is disabled within the meaning of the Act, an ALJ follows a five-step sequential evaluation: the ALJ must determine (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict his or her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work; and (5) whether the claimant's RFC permits him or her to perform alternative substantial gainful work which exists in the national economy in light of his or her age, education,

and work experience. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. § 404.1520.

## DISCUSSION

### I.     The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits using the process described above. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 1, 2017, the alleged onset date. Tr. 26. At step two, the ALJ concluded that Plaintiff had the following severe impairments: obesity; degenerative disc disease of the lumbar spine with stenosis and radiculopathy; right leg deep vein thrombosis; asthma; bilateral pulmonary thromboembolism with pulmonary infarction syndrome; acute pulmonary embolism; tachycardia; chronic obstructive pulmonary disease ("COPD"); and pulmonary infarction. Tr. 26-27.

At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any Listings impairment. Tr. 27-28. Next, the ALJ determined that Plaintiff retained the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a),[4] except that he could occasionally kneel, crouch, stoop, balance, crawl, climb stairs and ramps, and push or pull with both extremities; he could occasionally have exposure to vibration, dust, mists, gases, noxious odors, fumes, pulmonary irritants, and poor ventilation; he must be allowed to stand up to 5 minutes after 30 minutes of sitting and to sit down up to 5 minutes after every 30 minutes of standing while remaining on task; he could never climb ladders, ropes, and scaffolds, or be exposed to unprotected

---

[4] Sedentary work is defined in the regulations as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

heights and moving parts; and he would be able to understand, carry out, and remember simple instructions, and make simple work-related decisions.  Tr. 28-33.

At step four, the ALJ found that Plaintiff would be unable to perform any past relevant work.  Tr. 33-34.  At step five, the ALJ determined that there were jobs in the national economy that Plaintiff could perform—such as an addresser, document preparer, or call out operator—and therefore, the ALJ concluded that Plaintiff was not disabled.  Tr. 34-35.

## II.   Analysis

Plaintiff argues that (1) the ALJ failed to consider or incorporate Plaintiff's need for a cane into the RFC; (2) the ALJ failed to properly assess the consistency of Plaintiff's allegations with the evidence in the record; and (3) the ALJ incorrectly concluded that Plaintiff could perform work that exists in significant numbers in the national economy.  ECF No. 9-1 at 16-26.  Because the Court agrees with Plaintiff's first argument, it declines to address his remaining arguments.

The evidence in the record here suggests that Plaintiff needs to use a cane or assistive device.  At the hearing, Plaintiff testified that he used a cane because he was unable to sit or stand for too long.  Tr. 52.  The ALJ asked if Plaintiff's cane was prescribed, and Plaintiff testified that his doctors offered to prescribe him a cane, but his father had one available and he told the doctors that he was "okay with this one."  Tr. 53.  Plaintiff also testified that he was able to walk with the assistance of a cane but still needed to lean on things.  Tr. 54.  Indeed, in the decision, the ALJ acknowledged that Plaintiff "testified that he used a cane, but that it was not prescribed, though a neurosurgeon offered such."  Tr. 29.  The ALJ correctly recited Plaintiff's testimony that he could walk with a cane for about 10-15 minutes or without a cane for 5-10 minutes.  Tr. 29; *see* Tr. 58.  But the ALJ incorrectly noted that Plaintiff had testified that he could "stand without leaning for

15-30 minutes." Tr. 29.  In fact, Plaintiff testified that he could stand unassisted "[a]lmost none. A couple of minutes. . . . I have to lean on something all the time." Tr. 58.

While acknowledging that Plaintiff testified to his need to use a cane, the ALJ did not address whether a cane was medically necessary or incorporate any such assistive device into the RFC.  In a *post hoc* rationalization, the Commissioner argues that a cane is not medically necessary because it was not prescribed.  ECF No. 14-1 at 7; *see Alazawi v. Comm'r of Soc. Sec.*, No. 18-CV-00633, 2019 WL 4183910, at *4 (W.D.N.Y. Sept. 4, 2019) ("This court may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself." (quoting another source)).  As explained below, the record is replete with references to Plaintiff's need for the use of the cane. That Plaintiff declined to be prescribed a cane because he already had one simply does not demonstrate that he did not need one.  *Ubiles v. Berryhill*, No. 15-CV-895-RJA-MJR, 2017 WL 4712208, at *6 n.6 (W.D.N.Y. Sept. 29, 2017), *report and recommendation adopted*, No. 1:15-CV-00895 (MAT), 2017 WL 4680492 (W.D.N.Y. Oct. 18, 2017) (finding that ALJ erred in concluding that plaintiff did not need a cane because it was self-prescribed, because the treatment notes indicate that plaintiff's doctors directed plaintiff to use the cane).

The medical evidence in the record also supports Plaintiff's need for a cane.  Michael R. Stoffman, M.D., a neurosurgeon, reported that Plaintiff had an antalgic gain with the use of a cane, "as he feels at times his right leg will give out on him." Tr. 400, 409-10, 415-16.  Dr. Stoffman also reported diminished reflexes, Tr. 419-21, 563-64, 604-05, and weakness in his right lower extremities with degenerative disc disease and a "congenitally narrow spinal canal secondary to short pedicles," Tr. 563-64, 604-06.  At multiple appointments with his pulmonary doctor, Plaintiff reported extreme right lower extremity pain.  Tr. 431-33, 436-38.  Plaintiff's physical therapy notes

indicate weakness, loss of balance, issues with mobility, and abnormal gait.  Tr. 318, 692.  All of these records are consistent with Plaintiff's need for a cane.  However, despite this evidence, the ALJ failed to meaningfully address Plaintiff's need for a cane or incorporate any other concomitant limitations into the RFC.

The regulations require that once medical need for an assistive device has been established, as here, the ALJ must incorporate that device into the RFC.  SSR 96-9P, 1996 WL 374185 (1996). For example, in *Feringa v. Comm'r of Soc. Sec.*, No. 15-cv-785, 2016 WL 5417403 (N.D.N.Y. Sept. 9, 2016), the court remanded where a cane was approved by medical providers and the consultative evaluator, but the ALJ's RFC did not reflect the additional limitations someone with a cane may have.  The Court explained:

> The ALJ's RFC appears to take into account, in part, the fact that plaintiff uses a cane insofar as he was to avoid climbing scaffolds, ropes, and ladders, and must have a sit/stand option.  However, the RFC does not address additional possible limitations that arise for someone who requires the aid of a cane when ambulating, such as how use of a cane in one's dominant hand may impact his ability to complete some of the duties of light work, such as the ability to carry items weighing up to twenty pounds with one hand while using a cane in the other, and whether the need to use a cane in general could result in additional limitations on light work.

*Id.* at *7.

The ALJ here failed to engage in this analysis.  Nowhere does the ALJ address additional possible limitations that may arise from Plaintiff's use of a cane.  This is not harmless error because, as explained above, Plaintiff's need to use a cane to balance may interfere with his ability to sit and stand—as limited by the ALJ—or his ability perform tasks while standing and holding a cane. *See Vanever v. Berryhill*, No. 16-CV-1034, 2018 WL 4266058, at *2 (W.D.N.Y. Sept. 6, 2018) ("This error was not harmless. Once medical need for an assistive device has been established, the ALJ must incorporate that device into the RFC.").

The ALJ failed to meaningfully address whether Plaintiff's use of a cane was medically necessary.  Although the ALJ mentions Plaintiff's cane in passing, the Court cannot discern from the ALJ's decision whether he concluded that the cane was *not* medically necessary.  Indeed, there does not appear to be substantial evidence in the record for a conclusion that such an assistive device was not necessary.  To the contrary, the evidence suggests that Plaintiff needed a cane.  Nor does the RFC analysis contain any explicit, concomitant restrictions on Plaintiff's ability to balance or limitations in his ability to use the hand not holding the cane while standing.  On remand, the ALJ shall consider whether a cane is medically necessary and, if so, incorporate it and any related restrictions into the RFC.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings, ECF No. 9, is GRANTED, the Commissioner's motion for judgment on the pleading, ECF No. 14, is DENIED, and the matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk of Court shall enter judgment and close this case.

IT IS SO ORDERED.

Dated: February 16, 2022
     Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York

7